428 So.2d 1180 (1983)
SUCCESSION OF ARMSHAW, et al.
v.
SUCCESSION OF MARBURY, et al.
No. 82-CA-103.
Court of Appeal of Louisiana, Fifth Circuit.
March 8, 1983.
*1181 Robert B. Keaty, Kerry E. Shields, Keaty & Keaty, New Orleans, for plaintiffs-appellants.
Ronald R. Thompson, Baton Rouge, William Tabb, III, New Orleans, David Balfour, Baton Rouge, Carmelite M. Bertaut, Hammett, Leake & Hammett, New Orleans, for defendants-appellees.
Before KLIEBERT, BOWES and DUFRESNE, JJ.
KLIEBERT, Judge.
This is a devolutive appeal from the trial judge's ruling dismissing the State of Louisiana, Department of Transportation and Development (DOTD) from this action in tort for the wrongful death of Ruth Armshaw who died on February 14, 1979 in a one-car accident on U.S. Highway 61 (Airline) in St. James Parish. Mrs. Alicia Armshaw Keaty, individually and in her capacity as the succession representative of Ruth Armshaw, plaintiff, brought this action against the succession of Jessie L. Marbury, the owner and alleged driver of the car and her insurer, Government Employees Insurance Company for negligent operation of the car, and against DOTD for negligent design, construction, and maintenance of the highway. The only assignment of error is the trial judge's ruling refusing to permit Mr. Tony Tramel, the plaintiff's expert, to express his opinion as to why the accident happened. We affirm.
In the afternoon of February 14, 1979, a one-car accident occurred on U.S. Highway 61 at a point immediately north of the Blind River Bridge. At the place where the accident occurred, the Airline Highway is a four-lane highway with two outbound (northtowards Baton Rouge) and two inbound (southtowards New Orleans) traffic lanes, separated by a grass median. Immediately north of the Blind River Bridge, a left turn lane commences and runs north, adjacent to the left side of the northbound traffic lanes, a distance of approximately 350 feet to a crossover in the median. The outbound traffic lanes have a slight curve to the left which commences prior to the Blind River Bridge and follows through north of the crossover. While traveling in the outbound traffic lanes and successfully crossing the Blind River Bridge, the vehicle, occupied by Ruth Armshaw and Mrs. Marbury, entered the left-turn lane, went over the crossover and onto the grass median. Then, while in an apparent effort to get back into the outbound traffic lanes, the vehicle crossed the outbound lanes and went into and was totally submerged in a canal running parallel to the right side of the outbound traffic lanes. Both occupants died at the accident scene.
To prove liability on the part of the DOTD, it was necessary for plaintiff to establish a design defect in the highway or defective maintenance of the highway and that the particular defect was the cause of the accident sued on. During the course of the trial[1] Tony Tramel was qualified by the plaintiff as an expert on highway engineering and maintenance with a sub-specialty in *1182 highway design. Notwithstanding repeated objections by defense counsel, the trial judge gave plaintiff's counsel wide latitude in questioning and eliciting the expert's opinion as to design defects in the highway at the point where the accident occurred. In essence, the expert was of the opinion a broken back curve[2] followed by a straight line marking of the left turn lane (as opposed to a broken line marking) coupled with inadequate reflectors to mark the center lane was a highway design defect. However, the trial judge maintained an objection to the expert giving his opinion[3] as to why the design defect was the cause of the accident sued on.
The general rule as to qualification of experts and the allowance of their expert opinion in evidence was set out by Judge (subsequently Justice) Tate in Carvell v. Winn, 154 So.2d 788 (La.App. 3rd Cir.1963) at page 791, writ refused, and quoted in Jennings v. Allstate Insurance Company, 273 So.2d 534, (La.App. 1st Cir. 1973) at page 536, as follows:
"As previously stated herein, whether or not a witness meets the qualifications to testify as an expert is largely within the discretion of the trial judge. In our opinion, it is also largely within the discretion of the trial judge to determine the competency of expert witnesses to testify to specialized areas on inquiry not necessarily within his general competency to give an opinion as an expert, or at least not shown to be so by the facts of the record. That is, the trial court is not under a mandatory duty to permit an expert witness to testify to any matter upon which the expert himself says he is qualified to give an expert opinion; the court must have some discretion to limit the witness's testimony as an expert to the actual field of his expertise and as applicable to the facts of the particular litigation, then before it (subject of course to a showing that the court abused its discretion in this regard, State v. Carter, 217 La. 547, 46 So.2d 897.)
"Thus referring to the ability of a witness to testify as an expert based upon his `experiential capacity', Dean Wigmore noted that `The capacity is in every case a relative one, i.e., relative to the topic about which the person is asked to make the statement * * *. His fitness, then, is a fitness to answer on that point. He may be fitted to answer about countless other matters, but that does not justify accepting his views in the matter in hand.' 2 Wigmore on Evidence (3rd ed., 1940), Section 555(1) at p. 634. `In most jurisdictions it is repeatedly declared that the decision upon the experiential qualifications of witnesses should be left to the determination of the trial court', referring to `the fact of the possession of the required qualification by a particular witness.' Ibid, Section 561, p. 641. Cf. LSA-R.S. 15:466; State v. Mills, 229 La. 758, 86 So.2d 895 (syllabus 8)."
The question, therefore, narrows itself to whether the trial judge abused his discretion in maintaining the defense's objection, thus preventing the expert from expressing his opinion as to why the accident happened. After reviewing the record, we cannot say the trial judge abused his discretion.
As we understand the questions leading up to, as well as the one which caused an objection to be raised and maintained, plaintiff's counsel was attempting to elicit from Mr. Tramel an expert opinion as to why the car did what it did, not what it did. In our view, this was an inquiry as to the state of mind of the operator of the vehicle. Mr. Tramel was not qualified to express an opinion on that subject; nor was he qualified as an expert in accident reconstruction; nor did the facts establish who was the operator of the vehicle. Thus, as properly *1183 concluded by the trial judge, the opinion sought to be elicited from Mr. Tramel was outside his field of expertise and predicated on unproven facts.
Until the alleged fault in the design is tied into or connected directly to the actions of the driver and thus proven to be the cause of the accident, the plaintiff has failed to prove his case by a preponderance of the evidence needed to impose liability on the DOTD. Accordingly, the ruling of the trial judge dismissing plaintiff's suit is affirmed. All costs of the appeal to be borne by the plaintiff.
AFFIRMED.
NOTES
[1] Insofar as the case against the DOTD was concerned, it was a judge trial. The case against the succession of Mrs. Marbury was a jury trial. The cases were being tried simultaneously.
[2] A curve with a center section being less than 1500 feet and straight rather than following through with the same curvature. Here the expert considers the bridge over Blind River as being straight whereas in his opinion it should have followed a one-half of one degree curvature to the left.
[3] The trial judge permitted a proffer of the opinion.