557 So.2d 302 (1990)
Patrick D. BREEDEN, et al.
v.
VALENCIA, INC., et al.
No. 88-CA-1655.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 1990.
Writ Denied March 30, 1990.
*303 Edmond J. Harris Heisler & Wysocki New Orleans, for appellants.
Robert A. Vosbein, Lynn M. Luker, and Edwin C. Laizer, New Orleans, for defendants/appellees, Michael Fagan and Compass Ins. Co.
Owen Neff and Michael M. Meunier, Sessions, Fishman, Boisfontaine, Nathan, Winn, Butler & Barkley, New Orleans, for defendants-appellees, Valencia, Inc. and U.S. Fire Ins. Co.
Francis G. Weller and Nancy J. Marshall, Deutsch, Kerrigan & Stiles, for defendant-appellee, Kawasaki Motors Corp., U.S.A.
Before BARRY, WARD and WILLIAMS, JJ.
WILLIAMS, Judge.
Plaintiff in this case appeals the judgment of the trial court in favor of defendants Michael Fagan, Valencia, Inc., Kawasaki Motor Corporation, and their insurers. In her specifications of error, plaintiff alleges that the trial court erred 1) in limiting the expert testimony of plaintiff's witnesses, Dr. William VanBuskirk and Dr. Judson King; 2) in granting motions for involuntary dismissal in favor of defendants Fagan and Valencia; and 3) in ruling for defendant Kawasaki. Our review of the testimony shows that the trial court did not abuse its discretion in limiting the expert testimony of plaintiff's witnesses, Drs. VanBuskirk and King. Further, because we find that the plaintiff failed to show a right to relief against Fagan and Valencia under the facts shown and the law applicable to this case, LSA-C.C.P. art. 1672, we hold that the trial court properly granted these defendants' motion for an involuntary dismissal. Finally, after reviewing the testimony and evidence, we hold that the trial court did not err in rendering judgment in favor of defendant Kawasaki.
This suit was originally filed by Patrick D. and Margaret C. Breeden against defendants and their insurers for injuries sustained by plaintiffs' minor daughter, Margaret G. (Margee) Breeden.[1]
On April 30, 1983, Margee Breeden was injured when the jet ski upon which she was riding struck three cypress trees located on or near the bank of the Pearl River locks in Slidell, Louisiana. The accident occurred while Margee was participating in a camp program sponsored by defendant Valencia. Defendant Fagan was a counselor in the course and scope of his employment with Valencia at the time of the accident. Fagan supervised the eighth grade program and instructed the campers on the use and operation of the jet skis. The particular ski upon which Margee was riding at the time of the accident was owned by Fagan, rented to Valencia, and manufactured by Kawasaki.
The jet ski at issue is propelled by thrust which is created when the throttle is applied and water is jetted through an opening at the bottom rear of the ski. The ski *304 is steered with the use of handle bars which resemble those of a bicycle. The ski does not have a rudder. Rather, when the handle bars are turned, a nozzle or thrust diverter turns the direction of the ski. Thus, the skier has no directional control of the ski in the absence of thrust.
In their petition, plaintiffs alleged that the accident was caused, inter alia, by defendant Fagan's negligent instruction to Margee, a novice rider, concerning the steering operation of the ski, and that Valencia was liable under the theory of respondeat superior for the negligence of its employee, Fagan. Plaintiffs also alleged that Fagan and Valencia were strictly liable for hidden steering characteristics in the ski which presented an unreasonable risk of harm and caused Margee's damages. Finally, plaintiffs alleged negligence and strict liability claims against Kawasaki, specifically, that the ski was defective in design and/or warning to prospective users.
At the close of plaintiff's case, all defendants moved for an involuntary dismissal in accordance with LSA-C.C.P. art. 1672. The trial court granted the motion as to defendants Fagan and Valencia, as plaintiff failed to show any right to relief under the facts presented. The motion was denied as to defendant Kawasaki. After completion of the trial, the court ruled in favor of the remaining defendants. Plaintiff filed this appeal.
Expert Testimony
We first address plaintiff's fourth and fifth assignments of error, that the trial court erred in limiting the expert testimony of plaintiff's witnesses, Drs. William Van-Buskirk and Judson King. These assignments are without merit.
The purpose of an expert is to give an opinion based upon his professional qualifications and experience, and the trial court may properly exclude the testimony of any witness as an expert where that person is unable to demonstrate sufficient training or experience in the field for which he has sought to qualify as an expert. Hunnicutt v. Kent, 434 So.2d 91, 94 (La.App. 5th Cir.1982), writ den. 435 So.2d 442 (La. 1983). The qualification of a witness as an expert is within the sound discretion of the trial court, and that decision may not be reversed unless clearly wrong. Roberts v. Tiny Tim Thrifty Check, 367 So.2d 64 (La. App. 4th Cir.1979); Frank L. Beier Radio, Inc. v. Brown, 453 So.2d 656 (La.App. 5th Cir.1984), writ den. 458 So.2d 121 (La. 1984).
Further, as stated in Succession of Armshaw v. Succession of Marbury, 428 So.2d 1180 (La.App. 5th Cir.1983), "it is also largely within the discretion of the trial judge to determine the competency of expert witnesses to testify to specialized areas on inquiry not necessarily within his general competency to give an opinion as an expert, or at least not shown to be so by the facts of the record.... (T)he court must have some discretion to limit the witness's testimony as an expert to the actual field of his expertise and as applicable to the facts of the particular litigation, then before it...." Id. at 1182, quoting Carvell v. Winn, 154 So.2d 788, 791 (La.App. 3d Cir.1963).
The court in the instant case accepted Dr. VanBuskirk as an expert in the field of mechanical engineering and biomedical engineering. However, the court did not allow Dr. VanBuskirk to give his opinion[2] as to 1) the prudency of allowing Margee to ride the ski on the day and at the place of the accident, 2) the adequacy of the instructions given by Fagan, or 3) the operation of the jet ski.
The testimony of Dr. VanBuskirk established that the first time he had ever examined a jet ski was just prior to trial at a boat show. He had never ridden a jet ski or examined the interior design of a jet ski. While he had visited the site of the accident, he did not observe the particular trees which Margee hit and did not examine the actual ski Margee was riding on the day of the accident. These facts do not show that the specialized areas on which plaintiff sought Dr. VanBuskirk's expert testimony were within his general competency *305 as an expert in mechanical engineering or biomedical engineering. See Succession of Armshaw v. Succession of Marbury, supra. We note also that the qualification of Dr. VanBuskirk as an expert in mechanical engineering did not necessarily render him competent to testify as an expert on the particular mechanism of a jet ski. Hunnicutt v. Kent, 434 So.2d 91 (La. App. 5th Cir.1982); Poland v. Beaird-Poulan, 483 F.Supp. 1256 (W.D.La.1980). The testimony of Dr. VanBuskirk indicated that he had not had ample opportunity to practically apply his expertise to the mechanism at issue. See Poland v. Beaird-Poulan, supra at 1259. Accordingly, the trial court did not abuse its discretion in limiting the testimony of Dr. VanBuskirk.
Dr. King was recognized as an expert in experimental psychology, applied experimental psychology, human factors engineering, and engineering psychology. He was also accepted as an expert in accident reconstruction generally, but was not allowed to give his opinion[3] as to how the jet ski accident occurred or how Margee was injured. Dr. King was also not allowed to testify as to the design or warnings of the jet ski.
The testimony of Dr. King revealed that he had never operated a jet ski, but had only observed others doing so. Further, he had not examined the particular site of the accident. In view of Dr. King's limited experience or training with jet skis and his limited assessment of the accident site, we cannot say that the trial court abused its discretion in limiting the testimony of this witness.
Involuntary Dismissal
Plaintiff contends in her first and second assignments of error that the trial court erred in dismissing defendants Fagan and Valencia. Plaintiff asserts that involuntary dismissal under LSA-C.C.P. art. 1672 was improper because plaintiff showed a right to relief under the facts presented and the law applicable to this case. This assignment is without merit.
LSA-C.C.P. art. 1672(B) reads:
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
This article requires the court to consider all the evidence and render a decision based upon the preponderance of the evidence without any inference in favor of the party opposing the motion. Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366, 369 (La.App. 2d Cir.1988). See Murray v. Haspel-Kansas Investments, 395 So.2d 453 (La.App. 4th Cir.1981); Mott v. Babin Motors, Inc., 451 So.2d 632 (La.App. 3d Cir 1984). Proof by a preponderance of the evidence means, taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. Id., citing Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc., 315 So.2d 660 (La.1975); Gleason v. City of Shreveport, 393 So.2d 827 (La.App. 2d Cir.1981), writ den. 397 So.2d 806 (La.1981).
Plaintiff in the instant case first sought to prove that her damages were caused by defendant Fagan's negligent instruction to Margee concerning the steering operation of the ski. The cornerstone of Louisiana negligence law is LSA-C.C. art. 2315, which provides, in pertinent part:
Every act whatever of man that causes damage to another obliges him by whose fault it happens to repair it.
LSA-C.C. art. 2316 further provides:
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
Under these articles, an offender is liable for his breach of a legal duty which causes *306 damage to another. Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. Seals v. Morris, 410 So.2d 715, 718 (La.1982) (on rehearing); Kitchen v. Duke's Escort Service, 493 So.2d 829, 832 (La.App. 2d Cir. 1986), writ den. 496 So.2d 1048 (La.1986). In all cases, duty can be stated generally as the obligation to conform to the standard of conduct of a reasonable man under like circumstances. Id. Reasonableness, in turn, is determined by balancing the probability and magnitude of the harm with the cost of avoidance under the circumstances.
With these principles in mind, we now consider the evidence and testimony presented by plaintiff for a determination of whether involuntary dismissal was proper in this case.
Defendant Fagan, as the supervising instructor, had a duty to instruct the skiers on the proper use and operation of the jet ski. The 1981 Kawasaki jet ski owner's manual was introduced into evidence. It stated that anyone using the ski should become fully acquainted with the proper operating procedures of the ski. The instruction on riding stated that "(w)hen turning, releasing the throttle decreases the thrust of the jet pump and the boat will turn less sharply. Applying more throttle increases the thrust of the jet pump, making the boat turn more sharply." It also contained the following warning: "When the throttle is released completely, you have no directional control over the jet ski."
Defendant Fagan, testifying on cross for the plaintiff, stated that he extensively reviewed the jet ski instruction manual prior to instructing the campers on the operation of the ski. He did not, therefore, provide each camper with a copy of the manual, as it is extremely long and detailed. Fagan gave a twenty to thirty minute group instruction to the campers, in addition to a shorter individual instruction for each skier just prior to riding. Fagan instructed the campers to circle in a specified, large oval course on the river, to remain at all times within set boundaries, and to stay at least fifty feet from shore. He instructed them to remain in a kneeling position on the ski, and significantly, to take slow, controlled turns. He told the campers that the ski steers much like a bicycle and instructed them to ease up on the throttle when turning, but to not fully release the throttle, as the ski would become "wobbly" and the rider would lose control. Fagan also instructed the campers that, in case of an emergency situation, the skier should depress the emergency button found on the ski and jump off, and the ski would then circle back around to the skier. Fagan also individually reviewed the highlights of the group orientation, familiarized each skier with the buttons on the ski and answered any questions they had before sending them on the ride.
Nancy Kilgore, a chaperone on the 1983 Valencia trip, also testified under cross examination for the plaintiff. Kilgore testified that the group instruction was begun only after Fagan had the campers' attention. She essentially corroborated Fagan's testimony concerning the instructions given to the campers, stating that they were told to take slow, controlled turns, although not too slow. To this extent, Margee Breeden also corroborated Fagan's testimony concerning the instructions.
After considering all of the evidence, we conclude that plaintiff failed to establish by a preponderance of the evidence that Fagan fell below the standard of care which he owed to Margee in instructing her on the operation of the jet ski. The competent testimony and evidence presented by plaintiff showed that Fagan instructed the students in accordance with the manual. He instructed them to stay within set boundaries away from shore. Although he apparently did not elaborate on the mechanics of the relationship between throttle, thrust and turning, he did tell the students not to completely release the throttle and did instruct the skiers to take slow, controlled turns. He further instructed them to press the emergency stop button and evacuate the ski in case of an emergency.
Plaintiff contends that Fagan had a duty in this case to inform Margee that the ski *307 was propelled solely by the force of thrust created by increased throttle and that an increase in throttle was necessary to make a sharper turn with the ski. We disagree. Margee was a fourteen year old novice rider, and Fagan appropriately instructed her to operate the ski in a conservative manner. Indeed, it seems that instructing her to increase the throttle and make a fast, sharp turn in the event that she approached an obstacle, as plaintiff suggests, would only have increased the probability and magnitude of the harm. Under the circumstances, Fagan did not have a duty to instruct the novice skiers to increase the throttle in order to make a sharper turn.
Plaintiff also failed to establish by a preponderance of the evidence the causation element of her negligence action against Fagan or Valencia. A defendant's conduct is considered to be a cause-in-fact of harm to another if his conduct is a substantial factor in bringing about the harm. Armand v. Louisiana Power & Light Co., 482 So.2d 802 (La.App. 4th Cir. 1986), writ den. 484 So.2d 669 (La.1986); Nix v. Brasly, 489 So.2d 1038, 1041 (La. App. 1st Cir.1986), citing Bickham v. Goings, 460 So.2d 646 (La.App. 1st Cir.1984), writ den. 462 So.2d 1246 (La.1985).
The evidence showed that Margee had circled the course three to four times before the accident without any difficulty. Margee testified that at the time of the accident, she had just come out of her last turn and was traveling parallel to the bank of the river.[4] She realized she had violated the boundaries and was too close to shore. Margee stated that she attempted to turn the ski toward the center of the river, but that the ski did not respond, although she also stated that she was applying a constant one-third throttle to the ski at the time of the accident. The last thing that Margee remembered was ducking to avoid a tree limb hanging in her path. It was apparently at this time that she struck the trees on the bank. Significantly, although she realized before impact that she had violated the boundaries and was approaching an obstacle, Margee did not press the emergency stop button and jump off because she did not think she was in trouble. Thus, plaintiff did not show by a preponderance of the evidence that Fagan's failure to discuss the relationship between thrust and throttle was a cause-in-fact of Margee's harm.
Plaintiff also contends that the trial court erred in dismissing Fagan and Valencia because a preponderance of the evidence showed that these defendants were strictly liable for the damages caused by the ski which was in their custody. This contention is without merit.
LSA-C.C. art. 2317 provides, in pertinent part:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
Underlying article 2317 is the principal of strict liability. In order to recover in strict liability under this article, the plaintiff must prove that he was injured by a thing, that the thing was in the defendant's custody, that there was a vice or defect in the thing, and that the plaintiff's damage arose from that defect. Ross v. LaCoste de Monterville, 502 So.2d 1026, 1028 (La.1987), rehear. den. Upon proof of these elements, the guardian is responsible unless he proves that the damage was caused by the fault of the victim, the fault of a third person, or an irresistible force. Id.; Entrevia v. Hood, 427 So.2d 1146 (La.1983); Tracy v. Jefferson Parish through Department of Public Works, 523 So.2d 266 (La. App. 5th Cir.1988), writ den. 530 So.2d 569 (La.1988).
For a thing to be defective, it must create an unreasonable risk of harm under the circumstances. Entrevia v. Hood, 427 So.2d 1146 (La.1983). In determining reasonableness, *308 the court is to balance the probability and magnitude of the risk against the utility of the thing, Hunt v. City Stores, Inc., 387 So.2d 585, 588 (La. 1980), and must consider the case in terms of moral, social and economic considerations, Entrevia v. Hood, 427 So.2d at 1149; Tracy v. Jefferson Parish, 523 So.2d at 271.
Plaintiff in the instant case failed to prove that the ski was defective under the theory of strict liability. Plaintiff alleged that hidden steering characteristics of the ski, i.e., loss of directional control in the absence of thrust and wide turning radius at slow speeds, made the ski unreasonably dangerous under the circumstances, but presented no credible evidence to support this theory.
As previously stated, plaintiff's experts were not allowed to testify as to the design of the jet ski. Dr. King did testify as to a phenomenon known as "negative transfer of training" and its effect on this case. "Negative transfer of training" denotes a concept where a person trained to expect a particular response to a certain stimulus is then presented with a different response to the same stimulus. As applied to the case before us, Margee learned from an early age to slow down in the turn when riding a bike in order to maintain control. According to Dr. King, when Margee slowed down in turning the jet ski, the ski turned wider than she expected from her past experience with a bicycle. Plaintiff apparently contends that this phenomenon increased the probability of harm and created an unreasonable risk. We disagree.
The jet ski is a recreational machine. Individuals riding the ski can be expected to fall off, as evidenced by the fact that the ski circles back around to the skier in such a situation. Under these circumstances, a rudderless vehicle which is controlled in part by the force of thrust not only presents a decreased probability and magnitude of harm than would a vehicle with a rudder, but also contributes to the utility of the ski as a recreational vehicle. The utility of the ski outweighs the alleged risks associated with its use. See Hunt v. City Stores, Inc., 387 So.2d at 588. Thus, while the steering mechanism might present "negative transfer of training," the design of the ski is reasonable when considered in light of the intended use of the vehicle.
After considering all of the evidence and testimony presented by plaintiffs, we conclude that plaintiffs failed to show by a preponderance of the evidence that the ski was defective and Fagan and Valencia were strictly liable for the damage occasioned.
Accordingly, the trial court properly granted the involuntary dismissal in favor of defendants Fagan and Valencia.
Strict Liability of Kawasaki
By her third assignment of error, plaintiff contends the trial court erred in rendering judgment in favor of defendant Kawasaki. Specifically, plaintiff alleges that her damages were caused by a defect in the steering mechanism of the jet ski and that Kawasaki is liable for its failure to warn of the unreasonably dangerous condition associated with the relationship between throttle, thrust and turning radius of the ski. This assignment is without merit.
As detailed above, plaintiff failed to establish that the steering mechanism of the ski was unreasonably dangerous and constituted a defect. Nonetheless, a product might still be unreasonably dangerous if the manufacturer fails to adequately warn of a danger associated with the way the product is designed. A manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user. Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986);[5]LeBleu v. Homelite Division of Textron, Inc., 509 So.2d 563 (La.App. 3d Cir.1987).
In its reasons for judgment, the trial court found that the warnings on the machine and warnings and instructions in the *309 manual were adequate and appropriate for novice users of the ski, noting that several novice riders on the day of the accident rode the machine without incident. The court concluded that the accident was caused solely by the fault of plaintiff. After reviewing the record, we cannot say that the trial court was clearly wrong.
The instruction manual for the jet ski stated that releasing the throttle causes the ski to turn less sharply and increasing the throttle causes the ski to turn more sharply. It also contained the warning: "When the throttle is released completely, you have no directional control over the jet ski." John Snider, an expert in human factors engineering, accident reconstruction, safety engineering, and industrial engineering, testified for the defendant. Snider opined that the warnings provided by Kawasaki were reasonable. Ronald Robbins, an expert in the technical aspects of jet skis, performance and operation of jet skis, and accident reconstruction of jet skis, also testified for the defendant. He stated that the turning ability of the ski is not determined solely by the force of thrust, but is a function of both thrust and angle of thrust or steering input. Thus, as long as there is some thrust, a decrease in thrust can be compensated for by simply turning the handle bars more. He stated that the skier would have adequate thrust to turn from any constant throttle position, and that at any throttle, the turn is the same relative to speed. Margee testified that, at the time of the accident, she was applying a constant one-third throttle to the ski and was traveling parallel to the shore. When asked whether Margee would have any trouble turning toward the center of the river under these conditions, Robbins replied that she would not. Robbins opined that the accident occurred when Margee ducked to avoid a branch and lost control of the ski or inadvertently turned into the trees on the bank of the river.
Thus, the record supports the trial court's holding that the warnings were adequate and that the accident was caused solely by the fault of plaintiff. Accordingly, the trial court was correct in rendering judgment in favor of defendant Kawasaki.
For the foregoing reasons, we affirm the judgment of the trial court which limited the testimony of plaintiff's experts, Drs. VanBuskirk and King, granted involuntary dismissal in favor of defendants Fagan and Valencia, and rendered judgment in favor of defendant Kawasaki.
AFFIRMED.
NOTES
[1] At the time of trial, Margee had turned eighteen years old and was substituted as a plaintiff in her own right.
[2] The court allowed the proffer of this opinion testimony.
[3] The court allowed the proffer of this opinion testimony.
[4] It appears from the record that the jet ski collided with the trees in a course perpendicular to the bank of the river. Margee's testimony that she was traveling parallel to the bank just prior to impact indicates that she had completed her turn, but then lost control of the ski and turned into the bank.
[5] The Louisiana Products Liability Act, Acts 1988, No. 64, which superseded some of the principles of Halphen, was effective September 1, 1988 and is not applicable to the instant case.