556 So.2d 600 (1990)
Thomas Ed NICHOLS, et al.
v.
U.S. RENTALS, INC., et al.
No. 89-CA-525.
Court of Appeal of Louisiana, Fifth Circuit.
January 17, 1990.
*601 Wayne C. Giordano, Belle Chasse, for plaintiffs/appellants.
Carolyn Pratt Perry, Funderburk & Andrews, Baton Rouge, for defendant/appellee, U.S. Rentals, Inc., Transcontinental Ins. Co., Columbia Cas. Co. and Protective Nat. Ins. Co.
C. Scott Carter, Metairie, for defendants/appellees, Pro Comm Corp. and Cotton States Ins. Co.
Before KLIEBERT, BOWES and GOTHARD, JJ.
BOWES, Judge.
This appeal arises from a suit filed by Thomas E. Nichols and his wife, Jane F. Nichols, for damages for injuries sustained by Thomas Nichols after the cage of a Mark Pal man lift flipped and Nichols fell onto a concrete floor. Named as defendants in the suit were U.S. Rentals, owners of the lift, Mark Industries, manufacturer, Pro Comm Corporation and Telecom Plus, both of whom had rented the lift, and the respective insurance carriers of each *602 named defendant. Mark Industries and Telecom Plus settled prior to trial.
The case was tried before a jury on February 14, 1989. When plaintiffs had finished the presentation of their case, Pro Comm Corporation and Cotton States Insurance Company moved for and were granted a directed verdict. At the conclusion of the trial, the jury returned a verdict in favor of U.S. Rentals and its insurers and against plaintiffs. The jury verdict consisted of answers to twelve interrogatories, as follows:
Q1) Do you find that the plaintiff, Thomas Ed Nichols, was injured as a result of the events that occurred on June 11, 1984?
Yes x No
INSTRUCTION: If your answer is yes, proceed to question number 2. If your answer is no, proceed to the end of this form, sign and date it.
Q2) Do you find that the defendant, U.S. Rentals, Inc. was negligent in their modification and renting of the piece of equipment from which the plaintiff fell?
Yes No x
INSTRUCTION: If your answer is yes, proceed to question 3. If your answer is no, skip number 3 and proceed to number 4.
Q3) Do you find that the negligence of U.S. Rentals, Inc. was a cause in fact of the plaintiff's injuries?
Yes No
Q4) Do you find that the manufacturer failed to warn of those dangers outside the knowledge of the ordinary user?
Yes No x
INSTRUCTION: Proceed to question number 5.
Q5) Did this failure to warn contribute to the cause in fact of the accident?
Yes No x
INSTRUCTION: Proceed to question number 6.
Q6) Do you find that the plaintiff, Thomas Ed Nichols, was negligent in his use of the equipment?
Yes x No
INSTRUCTION: If your answer is yes, proceed to question number 7. If your answer is no, skip numbers 7 and 9 and proceed to question number 9.
Q7) Do you find that the negligence of the plaintiff was a contributing cause of his injuries?
Yes x No
INSTRUCTION: If your answer is yes, proceed to question number 8. If your answer is no, skip number 8 and proceed to question number 9.
Q8) What percentage if any do you attribute to the following parties:

Mark Industries 0%
U.S. Rentals 0%
Thomas Ed Nichols 100%

Q9) What amount do you find would fully compensate the plaintiff, Thomas Ed Nichols, for his injuries? (Make no reduction for the negligence of the plaintiff, if any was found. Any reduction will be made by the Court.)
a. Past and present mental $ 0
and physical pain and suffering
b. Future mental and physical $ 0
pain and suffering
c. Present and future medical $ 0
expenses
d. Loss of earning capacity $ 0
e. Permanent disability $ 0
INSTRUCTION: Proceed to question number 10.
Q10) Do you find that the plaintiff, Jane F. Nichols, suffered a loss of consortium as a result of the injury to her husband?
Yes No x
INSTRUCTION; If your answer is yes, proceed to question 11. If your answer is no, proceed to the end of this form and sign and date it.
Q11) What amount would fully compensate Jane F. Nichols for her loss of consortium?
Q12 Did U.S. Rentals, Inc. breach its lease or agreement with Pro Comm Corp. by failing to pick up the manlift prior to the accident?
Yes No x
Plaintiffs filed for a devolutive appeal, assigning nineteen specifications of error. We find that all of plaintiffs' allegations of error lack merit. Consequently, we affirm the verdict of the jury and the judgment of the trial court.
The facts of the case are as follows:
In 1984, Thomas Nichols was employed by Associated Distributors, the parent company of West Building Materials, Inc. On May 10, 1984, Nichols arrived in Louisiana to supervise renovation and addition work being performed at the West Building Materials store in Gretna, Louisiana. Thereafter, Nichols was at the job site daily each Monday through Friday.
*603 Telecom Plus was hired to install a telephone system at the West Building. In May, 1984, Telecom rented a portable scaffold, known as a "Mark Pal" man lift, from U.S. Rentals, Inc. After Telecom was finished with the lift, it was returned to U.S. Rentals.
The Mark Pal man lift has a platform which is raised by means of a hydraulic lift. The platform is surrounded by a metal cage. The cage is not permanently attached to the floor, but is secured by the use of wing nuts and bolts. In addition, there is a wing nut which secures the door of the cage. A spring-loaded rod is located on the side of the cage, which is a locking device to secure the cage. The man lift also has outriggers which are to be extended to stabilize the lift and to prevent it from tipping over. There are several decals on the lift, including two which state "CAUTION  CAGE SAFETY WING NUTS MUST BE SECURED BEFORE RAISING PLATFORM"; and "CAUTION  EXTEND OUT RIGGERS BEFORE USING."
After purchasing several of these lifts, U.S. Rentals discovered that the wing nuts would rust and break when someone was trying to disconnect the cage. U.S. Rentals changed the wing nuts to hexagon-shaped nuts, which could be removed without breaking. However, U.S. Rentals did not change the warning decal on the man lift.
Pro Comm Corporation was hired to install a security system in the West Building. On Monday, June 4, 1984, Pro Comm's sales and service representative, Morris Baden, contacted U.S. Rentals to rent the man lift and it was delivered on Tuesday of that week. The driver of the delivery truck, a U.S. Rentals employee, gave Baden instructions on how to use the lift. These instructions included how to turn the cage to its upright position, how to secure the platform of the cage by screwing the hexagon-shaped nuts into bolts sticking through holes in the floor, how to secure the spring-loaded safety latch, and how to extend the outriggers so the cage would not tip over.
Baden used the lift on Tuesday, Wednesday and part of Thursday. On Thursday, which was June 7, 1984, Baden called U.S. Rentals and told them he would be finished with the lift that day. Around noon, Baden brought the lift outside, dismantled the nuts, lowered the cage, and left the lift next to the fence so U.S. Rentals could retrieve the lift. Baden then told the manager of West Building Materials, Ed Knight, that he and his crew were leaving.
Because of delivery demands and personnel absences, U.S. Rentals scheduled pick up of the lift for Tuesday, June 12, 1984.
On Monday, June 11, 1984, when Nichols arrived at the store, he saw the lift inside the store, next to a side entrance; it was plugged into a socket for recharging. Some time during Monday afternoon, Nichols used the lift in order to ascertain whether some merchandise was on a shelf which was twelve-feet high. According to his testimony at trial, Nichols did not read the instructions or warning decals on the lift immediately prior to using the lift, nor did he secure the cage or extend the outriggers. Nichols testified that he believed the floor and the cage were made in a fixed position. He climbed up the ladder into the cage, raised the lift, but did not see what he was looking for. He lowered the lift and, as he climbed down the ladder, the cage tipped over and he fell onto the concrete floor.
Mr. Baden testified at trial that neither he nor anyone else associated with Pro Comm had given Nichols or any other West employee permission to use the man lift. Witnesses for U.S. Rentals testified that the company had never been contacted by Nichols or any other West representative for rental of the man lift, nor had any permission been given to Nichols or West to use the lift.
Nichols admitted at trial that he had never used this particular man lift before. While also admitting that he had not read the warning decals immediately prior to using the lift, he stated that he had read them on a previous occasion, and that he believed that the warning regarding the wing nuts applied to securing the door of *604 the cage. However, the credibility of this testimony is questioned greatly, if not absolutely contradicted, by his admission at trial that, in his deposition taken in April, 1986, he was asked if prior to using the lift he had read any of the instructions or directions that were on the lift itself and that his answer was "I did not notice the directions and I didn't read anything." [Emphasis supplied]
Based on the foregoing, it appears that the jury found that Nichols did not have permission to use the lift and that he did not read the warning decals prior to using the lift. The jury found that U.S. Rentals was not negligent in changing the wing nuts to hexagon-shaped nuts without changing the caution sign and also that U.S. Rentals was not negligent in waiting three working days to pick up the man lift after it went "off rent."

DIRECTED VERDICT
In assignment of error number twelve, plaintiffs allege as error the trial court's action in granting Pro Comm's motion for directed verdict.
The proper test for determining whether a directed verdict is appropriate in a jury case is whether the facts and inferences are so overwhelmingly in favor of the moving party that the court believes that reasonable men would not arrive at a contrary verdict. Mims v. State Farm Insurance Co., 478 So.2d 967 (La.App. 5 Cir. 1985), writ denied 482 So.2d 630 (La.1986).
In granting the motion for directed verdict, the trial court found that Pro Comm relinquished control of the man lift some four days prior to the accident. There is uncontradicted evidence to this effect in the record. Consequently, we are of the opinion that the trial court did not err in granting Pro Comm's motion for directed verdict.

FINDINGS OF FACT BY THE JURY
In several of plaintiffs' allegations of error, they challenge several findings of fact made by the jury.
In the recent case of Rosell v. Esco d/b/a Jolly Elevator Corp., 549 So.2d 840 (La.1989), the Louisiana Supreme Court reiterated the standard to be applied by an appellate court in a review of findings of fact by a jury or trial court, as follows:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716 (La. 1973). See also, Sevier v. United States Fidelity & Guaranty Co., 497 So.2d 1380, 1383 (La.1986); West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979); Davis v. Owen, 368 So.2d 1052, 1056 (La.1979); Cadiere v. West Gibson Products Co., 364 So.2d 998, 999 (La.1978); A. Tate, "Manifest Error". Further observations on appellate review of facts in Louisiana civil cases, 22 La.L. Rev. 605, 611 (1962). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux, supra at 1333; Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La. 1985). In applying the manifestly erroneous-clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. See F. Maraist, The Work of the Louisiana Appellate Courts *605 for the 1978-1979 Term  A Faculty Symposium, Civil Procedure, 40 La.L.Rev. 761, 764 (1980); Comment, Appellate Review of Facts in Louisiana Civil Cases, 21 La.L.Rev. 402, 412 (1961); Cf. Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504 [84 L.Ed.2d 518] (1985); Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562 [23 L.Ed.2d 129] (1969).
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999, 1001 (La.1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La. 1979). Where documents or objective evidence so contradict the witness' story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness' story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. See, Wilson v. Jacobs, 438 So.2d 1119 (La.App. 2 Cir.1982), writ denied, 443 So.2d 586 (La.1983). Cf. State v. Mussall, 523 So.2d 1305 (La.1988); Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504 [84 L.Ed.2d 518] (1985); U.S. v. U.S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525 [92 L.Ed. 746] (1948). But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. See, Jackson v. Tate, 428 So.2d 882, 884 (La. App. 1 Cir., 1983), citing McDonald v. Book, 215 So.2d 394 (La.App. 3 Cir. 1968), overruled on other grounds, Celestine v. Hub City Motors, Inc., 327 So.2d 700 (La.App. 3 Cir. 1976). Cf. Anderson, supra [470 U.S.], at 575, 105 S.Ct. at 1512; Schexnider v. McDermott International Inc., 868 F.2d 717, 720 (5th Cir.1989); Employers Ins. of Wausau v. Suwanee River Spa Lines, Inc., 866 F.2d 752, 770 (5th Cir.1989); U.S. v. Hibernia National Bank, 841 F.2d 592, 595 (5th Cir.1988); Hanson v. Veterans Administration, 800 F.2d 1381, 1388 (5th Cir.1986).
We now apply the above-quoted principles of law to appellant's specifications of error.
ASSIGNMENTS OF ERROR NUMBERS 4 AND 19
In assignments of error numbers four and nineteen, the plaintiffs appear to allege that the jury erred by failing to find that the man lift was defective because the spring safety rod was bent or not working properly.
At trial, Mr. Baden testified that he and his crew did not encounter any problems whatsoever with the man lift. In addition, William Stevens, manager of U.S. Rentals during June of 1984, testified that he examined the man lift after the accident and showed Mr. Knight, the West manager, that the safety rod was not bent, nor malfunctioning in any way.
In view of this evidence, we find no manifest error in the finding of the jury that U.S. Rentals did not rent a defective piece of equipment and, therefore, was not guilty of negligence. This assignment is meritless.
ASSIGNMENTS OF ERROR NUMBERS 5, 6 and 7
In assignments of error numbers five and seven, the plaintiffs appear to allege that the jury erred in failing to find U.S. Rentals negligent for changing the wing nuts to hexagon-shaped nuts. In assignment of error number six, the plaintiffs allege that the jury erred in failing to find *606 that the caution sign placed on the manlift was inadequate and/or misleading.
Plaintiffs are contending that the sign warning the user to secure wing nuts was misleading because it led the user to believe that only the door of the cage needed to be secured. Plaintiffs also seem to contend that the use of hexagon-shaped nuts instead of wing nuts created a dangerous situation because, with the cage resting on hexagon-shaped nuts when dismantled, it laid closer to the platform of the lift, misleading the user into believing that the cage and the platform were attached.
The plaintiff's safety expert, Mr. Gallardo, testified that he believed that changing the type of nuts from wing to hex, without changing the sign, created a dangerous situation and rendered the lift defective. However, U.S. Rentals' safety expert, Mr. Howard, testified that it was his opinion that the substitution of the hex nuts for wing nuts had nothing to do with the accident because the cage covered up the nuts. Instead, he was of the opinion that the warnings were perfectly adequate and that it was Nichols' conduct and complete lack of instructions on how to properly use this sophisticated machine that were the causes of the accident.
Faced with this divergent testimony, the jury obviously accepted the testimony of Mr. Howard over Mr. Gallardo, which they are entitled to do. Indeed, determination of the credibility of witnesses is the jury's primary function.
Additionally, assuming arguendo, that U.S. Rentals should have changed the signs, their failure to do so does not make them negligent under the facts of this particular case. Here, the plaintiff testified that he did not read the warning decals on the lift immediately prior to its use and further testified that, although he had read the decals on a previous occasion, he could not recall the decals in question. He then contradicted even this testimony to some extent by an admission that he had previously stated in a deposition that he had not seen the warnings and did not read anything. Thus, even if U.S. Rentals had changed the signs, the jury could logically conclude that the plaintiff did not see them and/or would not have heeded them.
This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER 13
In assignment of error number thirteen, the plaintiffs allege that the jury erred in finding that Nichols was 100% at fault in causing the accident.
In reaching this conclusion, the jury apparently concluded that Nichols used the man lift without reading any of the caution decals and without having received any instructions on how to use this sophisticated piece of equipment properly. The jury apparently also concluded that Nichols had no actual or implied permission from U.S. Rentals or from any previous lessee to use the man lift. There is more than sufficient testimony in the record to support these findings of fact.
Because there is ample evidence in the record to support all of the jury's factual findings, we cannot find that these findings are manifestly erroneous or clearly wrong.
We, therefore, conclude that plaintiffs' assignments of error relative to the factual determinations made by the jury are without merit.
ASSIGNMENTS OF ERROR NUMBERS 1 AND 2

JURY SELECTION
In assignments of error numbers one and two, plaintiffs allege that the trial court erred in denying their challenges for cause of several prospective jurors.
The grounds for exercising challenges for cause are set forth in C.C.P. art. 1765, which provides:
A juror may be challenged for cause based upon any of the following:
(1) When the juror lacks a qualification required by law;
(2) When the juror has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial;
(3) When the relations whether by blood, marriage, employment, friendship, or enmity between the juror and any *607 party or his attorney are such that it must be reasonably believed that they would influence the juror in coming to a verdict;
(4) When the juror served on a previous jury, which tried the same case or one arising out of the same facts;
(5) When the juror refuses to answer a question on the voir dire examination on the ground that his answer might tend to incriminate him.
In the case of Bernard v. Richoux, 464 So.2d 856, 859 (La.App. 5 Cir.1985), we quoted and adopted the following jurisprudence:
Last year, the Supreme Court, in State v. Harper, 430 So.2d 627 (La.1983), explained:
The constitutional standard of fundamental fairness requires that a defendant be judged by a panel of impartial and unbiased jurors. This does not mean, however, that they must be totally ignorant of the facts and issues involved. State v. Willie, 410 So.2d 1019 (1982); State v. Bell, 315 So.2d 307 (La.1975). In some instances we have determined that a juror, who has read or heard about the case, can sufficiently lay aside his impression or opinion of defendant's guilt or innocence and render a verdict based on the evidence presented in court. See most recently, State v. David, 425 So.2d 1241 (La.1983). Usually it is incumbent upon the defendant "to demonstrate the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality." State v. David, supra ... and most recently, in State v. Monk, 454 So.2d 421 (La.App. 3rd Cir.1984), our brothers of the Third Circuit, with whom we agree, stated:
There is a presumption that a juror's answers on voir dire are truthful. Irvin v. Dowd, [366 U.S. 717, 81 S.Ct. 1639 6 L.Ed.2d 751 (1961) ]
The trial judge is vested with broad discretion in ruling on a challenge for cause which ruling will not be disturbed on appeal absent an abuse of that discretion. State v. Sylvester, [400 So.2d 640 (La.1981) ]
If a prospective juror can declare to the trial court's reasonable satisfaction that he can render an impartial verdict according to the law and evidence, a challenge for cause to that juror is properly denied. Dawson v. Mazda Motors of America, Inc., 517 So.2d 283 (La.App. 1 Cir.1987).
Plaintiffs raised a challenge for cause against a potential juror, Mr. Finney, because he worked as an insurance adjuster and because Mr. Finney stated that plaintiffs' counsel looked a little familiar. However, Mr. Finney stated in voir dire that his work as an adjuster would not influence him nor prevent him from rendering a fair and impartial decision in this case and plaintiffs' counsel failed to show otherwise or present jurisprudence to the contrary regarding the factual situation concerning Mr. Finney. Accordingly, the trial court did not err in denying plaintiffs' challenge for cause.
Plaintiffs argue that prospective jurors, Mr. Cahn, Mr. Metcalf, Mr. Wilson and Mr. O'Flynn, should have been excused for cause because they had encountered certain insurance company advertisements regarding rates and premiums being affected by compensation awards.
Plaintiffs did not challenge prospective jurors Metcalf, Wilson and O'Flynn for cause at trial. Therefore, he may not raise this issue for the first time on appeal. Dawson v. Mazda Motors of America, Inc., supra.
Regarding Mr. Cahn, during voir dire, he stated that he had heard of persons who were both under-compensated and over-compensated and that he would make his decision on a case-by-case basis. Also, in our opinion, Mr. Cahn's answers, as a whole, reflect that he could be fair and impartial.
We find that the trial court did not err in denying plaintiffs challenges for cause of prospective jurors Finney and Cahn and, accordingly, we find these assignments to be meritless.
*608 ASSIGNMENT OF ERROR NUMBER 3

JURY CONDUCT
In assignment of error number three, plaintiffs allege that the trial court erred in requiring the jury to deliberate past 8:00 p.m. on the last day of trial, after having informed the jury during voir dire that they would not be kept in court past 8:00 p.m. Appellants contend that the trial court's actions inflicted "mental harassment or intimidation" and may have caused some jurors to reach a conclusion they might otherwise not have reached.
However, we find that a review of the record does not support plaintiffs contentions. There is no evidence that the jury objected to deliberating past 8:00 p.m. on this last day of trial (a Friday night), nor is there any evidence that the jury was "forced" or "intimidated" into rendering its verdict. This assignment completely lacks merit.
ASSIGNMENT OF ERROR NUMBER 9
In assignment of error number nine, plaintiffs allege that the trial court erred in admitting into evidence photographs of ladders owned by West and also in allowing the jury to view these photographs in the jury room during a recess at trial.
The record reflects that, at trial, the plaintiffs objected to the admission of these photographs, arguing that they were not in the defendants' exhibit list. After the trial judge was informed that the plaintiffs had received pre-trial notice of the photographs, he ordered them admitted into evidence.
On appeal, the plaintiffs additionally argue that the photographs should not have been admitted because it was not established that the ladders they depict were located at the West warehouse at the time of the accident. The plaintiffs also allege, for the first time, that the trial court erred in allowing the jury to view the photographs in the jury room during a recess. Because the plaintiffs did not object to the admission of the photographs on these grounds at trial, they may not now raise these issues for the first time on appeal. C.C.P. art. 1635; Calderon v. Joseph, 453 So.2d 615 (La.App. 1 Cir.1984).
This assignment lacks merit.
ASSIGNMENTS OF ERROR NUMBERS 5, 8 AND 16
In assignments of error numbers five, eight and sixteen, the plaintiffs allege that the trial court erred in its instructions to the jury regarding the liability of U.S. Rentals for changing the nuts on the floor of the cage, Thomas Nichols' authority to use the man lift and plaintiffs' burden of proof in showing that the lift was defective. In addition, plaintiffs argue (in assignment number eight) that the interrogatories presented to the jury were insufficient because they failed to include an interrogatory as to whether U.S. Rentals should be liable for modifying the man lift in the event that the jury found that Thomas Nichols did not have permission to use the lift.
A review of the record reflects that the plaintiffs did not object at trial to the jury charges given by the trial court as required by C.C.P. art. 1793 and, therefore, have forfeited any right to complain of any error in the jury instructions on appeal. C.C.P. art. 1793(C); Hill v. Lamulle, 506 So.2d 690 (La.App. 5 Cir.1987).
Likewise, plaintiffs offered no objection at trial to the interrogatories presented to the jury and may not be heard to complain of the alleged insufficiency for the first time on appeal. Nailor v. International Harvester Co., 430 So.2d 784 (La.App. 5 Cir.1983), writ denied 437 So.2d 1148 (La. 1983). This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER 18

VOIR DIRE
In assignment of error number eighteen, plaintiffs allege that Pro Comm's questions during voir dire were improper.
The record reveals that counsel for Pro Comm asked five prospective jurors whether they thought it was alright for someone to use the equipment of another without permission. Plaintiffs argue that this suggested to the jury that Nichols did not have permission to use the man lift.
*609 Initially, it is noted that plaintiffs did not object to these questions during voir dire and, therefore, cannot raise the issue on appeal. Calderon v. Joseph, supra. Nevertheless, we find that the record contains sufficient evidence to support the jury's conclusion that Nichols did not have permission to use the lift.
This assignment is meritless.
ASSIGNMENT OF ERROR NUMBER 17

EVIDENTIARY RULINGS
In assignment of error number seventeen, plaintiffs allege that the trial court erred in refusing to allow into evidence a sign which was placed on the windshield of an illegally-parked automobile outside of the courthouse. Plaintiffs made no attempt, at trial, to proffer this evidence.
It is incumbent upon the party who contends his evidence was improperly excluded to make a proffer. If he fails to do so, he cannot contend on appeal that such exclusion was error. C.C.P. art. 1636; Jurovich v. Catalanotto, 506 So.2d 662 (La. App. 5 Cir.1987), writ denied 508 So.2d 87 (La.1987).
This assignment lacks merit.
ASSIGNMENT OF ERROR NUMBER 10
In assignment of error number ten, plaintiffs allege that the trial court erred in allowing the introduction of photographs of plaintiff's exotic animals into evidence, which were introduced to show that Nichols' earning capacity was not impaired by the accident. Because we agree with the jury's finding that plaintiffs are not entitled to damages, we need not address this issue, i.e., whether these photographs were prejudicial.
ASSIGNMENT OF ERROR NUMBER 11
In assignment of error number eleven, plaintiffs allege that the trial court erred in not allowing their safety expert, Mr. Gallardo, to testify in regard to "anticipated use of rental equipment" because knowledge of this subject was outside his area of expertise.
The trial court is given wide discretion in its rulings regarding whether or not a question or certain subject matter falls within the scope of the expert witness' field. Succession of Armshaw v. Succession of Marbury, 428 So.2d 1180 (La.App. 5 Cir. 1983). In this particular case, we see no abuse of the trial court's discretion in ruling that determining "anticipated" use was not in the scope of expertise of a safety expert.
Assuming arguendo that the trial court erred, this does not warrant reversal. Plaintiffs did not proffer the excluded testimony of Gallardo and, therefore, we have no way of knowing what he would have testified to had he been allowed to do so. Because plaintiffs did not proffer the testimony, they are precluded from complaining of its exclusion on appeal. McLean v. Hunter, 495 So.2d 1298 (La.1986). This assignment has no merit.
ASSIGNMENT OF ERROR NUMBER 14
In assignment of error number fourteen, it appears that plaintiffs are alleging that defendants' safety expert gave opinion testimony outside of his field of expertise.
As previously pointed out, the trial court is given wide discretion to determine the competency of a witness to testify as an expert regarding opinions sought to be elicited by counsel. See Succession of Armshaw v. Succession of Marbury, supra. We find no abuse of discretion in this instance.
This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER 15
In assignment of error number fifteen, plaintiffs allege that the trial court erred in allowing the defendants' safety expert to testify regarding the non-compliance with the caution sign warning the user to extend the outriggers before using the lift on the grounds that such testimony is irrelevant.
C.E. art. 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
*610 The issue of whether Nichols read and attempted to heed the caution signs on the man lift was a central issue in this case. Nichols' failure to extend the outriggers prior to using the man lift was, indeed, very relevant to a determination of this issue.
Accordingly, we find this assignment meritless.

CONCLUSION
For the above reasons, we find all assignments of error urged by appellants to be without merit. Accordingly, the verdict of the jury, which was made the judgment of the trial court, is affirmed. All costs of this appeal are assessed against plaintiffs/appellants.
AFFIRMED.