759 So.2d 1020 (2000)
Teresa Debra Fitzgerald LOWERY, Plaintiff-Appellee,
v.
Danny SAVANA, Defendant-Appellant.
No. 33,384-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 2000.
*1022 Lavalle B. Salomon, Monroe, Counsel for Appellant.
Thomas W. Rogers, Ruston, Counsel for Appellee.
Before WILLIAMS, KOSTELKA, DREW, JJ.
KOSTELKA, J.
Danny Savana ("Savana") appeals the trial court's assessment against him of $35,000 general damages and $5,133 past medical expenses arising from his perpetration of intentional tort upon Teresa Lowery ("Lowery"). We affirm in part and reverse in part.

FACTS
Savana and Lowery began a dating relationship after the July 4th, 1997 weekend. In early December, 1997, the two began cohabiting in a trailer owned by Savana. On the afternoon of December 27th, however, one of the parties made the decision to break up the relationship. Lowery testified that she told Savana she wanted to end their relationship; Savana claims to have informed Lowery of his desire to move out of the trailer. The parties agree that Savana departed the trailer sometime after this discussion. He returned to the unlocked trailer at approximately 2:00 a.m. the following morning. The parties' accounts of what thereafter transpired diverge.
Lowery claims that she woke up and heard Savana in the bathroom. He then came into the bedroom and began touching her stomach. After Lowery rejected Savana's sexual advances toward her, he proceeded to beat her in the head for a "little over two hours," spat in her face, cursed at her and threatened to kill her. Fearing for her safety, Lowery eventually apologized to Savana. He accepted her apology but then turned out the lights and again began touching her. Scared to again reject his advances, Lowery engaged in sexual relations with Savana. Thereafter, Lowery attempted to convince Savana that she needed medical attention. He first refused to let her go, fearing that he would be arrested. After Lowery assured him that she would tell no one what had happened, Savana relented. Lowery then drove to the apartment complex that she managed and went to the apartment of her tenant/friend, Judy Puckett ("Puckett"). At approximately 4:00 a.m., Lowery drove herself and Puckett to the hospital. After being released from the emergency room at least one hour later, Lowery went to Puckett's apartment to sleep. At some point, Lowery called the sheriffs department to report the incident. Lowery stayed with her brother and sister-in-law, Charles and Ann Fitzgerald, for a week after the incident. Savana was arrested on criminal charges.
Savana claims that upon his entrance into the trailer at 2:00 a.m., Lowery was still awake and asked where he had been. When he attempted to obtain pillows and a blanket from the bedroom, Lowery began hitting him while she was still in bed. After she got out of the bed, she kicked him in the groin which caused him to fall. When "something caught [him] in the eye...." as he went down, he hit her. Afterwards, the two talked and Lowery began kissing him. Savana claims to have refused her advances and denies that the two engaged in sexual intercourse. Eventually, Lowery left the trailer.
On January 23, 1998, Lowery filed this personal injury suit against Savana seeking damages and medical expenses. After hearing the evidence, the trial court accepted Lowery's version of the incident and found that she had carried her burden of proving that Savana had committed a battery upon her by a preponderance of the evidence. The court awarded her $45,133 ($35,000 in general damages, $5,133 in past medical expenses, $3,000 in future medical expenses and $2,000 in lost *1023 income). The court also allowed Savana a $1,200 credit for sums paid to Lowery as the result of his criminal adjudication.[1] This appeal ensued.

DISCUSSION
Battery is defined as an intentional offensive contact with another person. Minkler v. Chumley, 32,558 (La. App.2d Cir.12/08/99), 747 So.2d 720. In order to recover for a battery, a plaintiff must prove by a preponderance of the evidence that her damages resulted from an unprovoked attack by defendant. Id. Louisiana's aggressor doctrine precludes tort recovery where the plaintiff acts in such a way as to provoke a reasonable person to use physical force in fear or anticipation of further injury at the hand of the aggressor plaintiff, unless the person retaliating has used excessive force to repel the aggression. Minkler, supra; Slayton v. McDonald, 29,257 (La.App.2d Cir.02/26/97), 690 So.2d 914. Where a defendant relies upon provocation as justification for a battery, he must prove some conduct or action by plaintiff sufficient to provoke and arouse him to the point of physical retaliation. Id.

Burden of Proof
Savana first argues that the trial court erred in finding that Lowery had sustained her burden of proof that he committed a battery upon her by a preponderance of the evidence. We cannot agree.
An appellate court may not set aside a finding of fact unless that finding is manifestly erroneous or clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). In order to reverse the trial court's findings, the appellate court must, after a review of the record in its entirety, find that there is no factual basis for the trial court's finding. Slayton, supra. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact-finder's conclusion was a reasonable one. Stobart, supra. When findings of fact are based upon determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989). Credibility determinations are the function and prerogative of the trial court. Slayton, supra.
In this case, the trial court explicitly accepted Lowery's version of the incident and rejected Savana's claim that Lowery was the aggressor and that he did not use unreasonable force in repelling her actions. At trial, Puckett and Ann Fitzgerald corroborated Lowery's testimony. The photographs of Lowery's injuries introduced into evidence clearly validate her claims as well.[2] Notably, those striking pictures also depict injuries which are inconsistent both with Savana's description of the blows he claimed to have inflicted on Lowery and his contended use of reasonable force. It is unlikely, too, that a physical attack by Lowery would have provoked an individual possessing Savana's strength to retaliate with fear-based physical force or anticipation of injury. Such a postulate is certainly inconsistent with Savana's testimony that he physically restrained Lowery on the bed in order to restrict her ability to hit him. Accordingly, we can discern no error in the trial court's credibility determinations.
*1024 Moreover, Lowery's testimony that Savana entered the couples' trailer in the early morning hours of December 28th and, without provocation, hit her about the face and head for an extended period of time which resulted in substantial physical injuries is sufficient proof of battery by a preponderance of the evidence. Accordingly, the trial court determination in this regard is more than reasonably supported by the record.

Quantum
Savana next claims that the $35,000 general damage award is excessive and should be reduced to $5,000.
General damages are those that may not be fixed with pecuniary exactitude. Such damages involve mental or physical pain or suffering, inconvenience, the loss of physical enjoyment or other losses of life or lifestyle that cannot be definitively measured in monetary terms. Minkler, supra.
A trial court must balance many factors in assessing damages in assault and battery cases. These include, besides physical pain and suffering, the factors of provocation, reasonableness of force used, attendant humiliating circumstances, sex of the victim, mental distress, etc. There is no rule or standard of law fixing or establishing the amount of recovery. Each case, consequently, must rest on its own set of facts, with great discretion afforded the trial court to assess general damages. Eddy v. Litton, 586 So.2d 670 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1203 (La.1992).
Before an appellate court may disturb a damage award, the record must clearly reveal that the trial court abused its broad discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). In determining whether the trier of fact abused its discretion by making an excessive award, the evidence must be viewed in the light most favorable to the plaintiff. Babb v. Boney, 30,443 (La.App.2d Cir.04/08/98), 710 So.2d 1132. Of course, upon finding an award is beyond that which a reasonable trier of fact could assess, the reviewing court may lower an award of general damages to the highest amount that could appropriately be granted. Youn, supra.
In this case, the evidence shows that Lowery received serious physical injury from the battery. Photographs introduced into evidence reveal the visible force with which Lowery was hit. The pain and humiliation attendant to the lengthy unprovoked ordeal through which Savana continually hit Lowery about the head and face, cursed at her, repeatedly threatened to kill her, and spat in her face are obvious. Such factors were obviously intensified when Savana declined Lowery's request to allow her to seek medical assistance despite her obvious swelling and pain. Moreover, Lowery's humiliation culminated, when out of fear for her life, she acquiesced to offering an unjustified apology and having sexual relations with Savana.
Lowery testified that for a week after the incident, she experienced constant physical pain, headaches, faintness and dizziness; she also had knots on the back of her head, ear and neck and bruising about her body. During that time, she could not eat, was bedridden and missed one week of work. She returned to the emergency room approximately one week after the incident with complaints of serious head pain, faintness and dizziness. She lived with her brother and his wife for a week after the incident and then moved in with another friend for three weeks at the apartment complex where she worked. Lowery was forced to return to work a week after the accident because she needed the money. She continued to experience headaches through June of 1998 when she quit her job; she was no longer able to perform the required maintenance duties of her apartment manager's position. She obtained another apartment manager's post in Bossier City, Louisiana, which required *1025 her to perform only office duties. She took a cut in pay and was forced to cease receiving any medical treatment after the move because she lost her insurance coverage.
The headaches, which she experienced from January through June of 1998, required medical treatment by a neurologist; she also had nightmares. During that six-month period, Lowery also sought medical treatment for her eyes and ears. She testified that after the accident, she could not see as well as before and her ears hurt where Savana hit her. She also had "trouble with [her] hearing in her right ear" after the accident.
At the recommendation of her neurologist, Lowery began seeing Dr. Bobby Stephenson ("Stephenson"), a psychologist. For trial purposes, Stephenson was tendered as an expert in the field of psychology; he testified via deposition which was introduced at trial in lieu of his testimony. Stephenson first saw Lowery on May 20, 1998. At that time, he felt that Lowery was continuing to have emotional difficulty in managing and dealing with the events of December 1997. Specifically, she was hypervigilant, constantly looking over her shoulder in fear that she would run into Savana. Stephenson also noted that Lowery was anxious, having problems sleeping and continued to complain of headaches. Stephenson diagnosed Lowery with posttraumatic stress disorder. Although he saw her only three times (May 20, 27 and June 18, 1997), he felt that Lowery needed continued counseling. He testified that even with counseling she would persist in long-term anxiousness, worry, dread, generalized distrust and specific distrust in future relationships. He felt that Lowery would tend to have trouble regaining her sense of safety and security in the world. Stephenson felt that with therapy, however, Lowery would make a fairly good recovery in six months; he felt that this could be accomplished in twenty-six sessions. The last time he saw Lowery, she had made improvement but had not recovered from the trauma.
Lowery testified that she quit seeing Stephenson because of her job move in June of 1998. She also noted that she still experienced severe headaches as of the time of trial (June 29, 1999). At times, the headaches are more frequent than others and she continued to utilize medication for treatment. Her eye and ear difficulties continued at the time of trial, including her right ear hearing problems. Lowery testified that she continued having nightmares and remained fearful that she might see Savana.
Puckett noted changes in Lowery after the accident. She described her as "less independent," "more afraid and upset," and "just different."
From this evidence, we can deduce no abuse of discretion in the trial court's general damage award. Lowery received a substantial and unprovoked physical beating at the hands of Savana. The obvious humiliation experienced by Lowery escalated during the attack as she resorted to demeaning tactics in order to save her life. Any private humiliation soon became public after she was forced to appear before family, friends and coworkers with the obvious physical results of the battery. The ordeal caused serious and long-term physical pain and mental anguish, including, but not limited to, headaches and post-traumatic stress disorder. Considering both these facts and the great discretion granted to the trial court in the assessment of damages for battery, we decline to disturb the $35,000 award.

Past Medical Expenses
Savana finally claims that the trial court erred in awarding $5,133 in past medical expenses to Lowery. At trial, Lowery sought to introduce proof of her medical expenses related to the battery through insurance statements she received in the mail; Lowery testified that she received no medical bills. After defense objection, the trial court rejected the introduction of this evidence as hearsay. Accordingly, the only evidence presented in proof of medical expenses was Lowery's testimony that *1026 her total medical outlay was $5,133. The trial court accepted her testimony as sufficient proof of past medical expenses and awarded the total amount; Savana was granted a $1,200 credit for amounts he paid as the result of the criminal proceedings.
While a plaintiff may recover past medical expenses which are incurred as the result of an injury, she must prove that, more probably than not, medical treatment was necessitated by trauma suffered in the tort. When a plaintiff alleges that she has incurred medical expenses and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of that item in the judgment. Rowsey v. Jones, 26,823 (La.App.2d Cir.05/10/95), 655 So.2d 560; Este' v. State Farm Ins. Co., 96-99 (La.App. 3rd Cir.07/10/96), 676 So.2d 850; White v. Longanecker, 93-1122 (La.App. 1st Cir.05/23/94), 637 So.2d 1213, writ denied, 94-1704 (La.10/07/94), 644 So.2d 640; Landry v. City of Abbeville, 625 So.2d 655 (La.App. 3d Cir.1993), writ denied, 93-2820 (La.01/28/94), 630 So.2d 789.
Moreover, although a plaintiff may ordinarily recover reasonable medical expenses, past and future, which she incurs as a result of an injury, she must prove the existence of the injuries and a causal connection between the injuries and the tort. The test is whether plaintiff has shown through medical testimony that more probably than not the subsequent medical treatment was necessitated by the trauma suffered in the tort. Gardner v. Griffin, 97-379 (La.App. 1st Cir.04/08/98), 712 So.2d 583; White, supra; Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144 (La.App. 3d Cir.1990), writ denied, 565 So.2d 450 (La.1990).
The jurisprudence requires more proof than the plaintiff's uncorroborated testimony to establish past medical expenses. Here, Lowery's testimony regarding her past medical expenses is not only unsupported by any medical evidence, such as bills or physicians' testimony, but also fails to establish a causal relationship between the claimed expenses and the battery. Under these circumstances, we cannot find this testimony sufficient to qualify as adequate proof of Lowery's past medical expenses. Accordingly, it will be necessary that we reverse those portions of the judgment awarding $5,133 in past medical expenses and granting Savana's corresponding credit for those medical expenses previously paid to Lowery. Nevertheless, our partial reversal of the present judgment in no way affects Lowery's right to adequate compensation by Savana for these medical expenses through any other adjudication not presently before this court.

CONCLUSION
For the foregoing reasons, we affirm that portion of the judgment in favor of Lowery and against Savana for the sum of $40,000, and reverse those portions of the judgment which awarded Lowery $5,133 in past medical expenses and granted Savana's corresponding credit against those medical expenses paid through June 1999. Costs of this appeal are assessed against Savana.
JUDGMENT AFFIRMED IN PART; REVERSED IN PART; RENDERED.
NOTES
[1] Savana's amended answer alleges that Savana pled no contest to a charge of simple battery and that as a result of that plea, he was ordered to pay $100 per month for the restitution of medical expenses incurred by Lowery as the result of the incident.
[2] We are also impressed with the medical testimony of Lowery's psychologist, Dr. Bobby Stephenson, who diagnosed her with post-traumatic stress disorder. We agree with the trial court "that it would seem highly unlikely that this type of emotional anguish could have arisen had the incident occurred as described by Mr. Savana."