779 So.2d 876 (2000)
Viola JOHNSON, Plaintiff-Appellant,
v.
Kerry ENGLISH and Atlas Processing, Defendant-Appellee.
No. 34,322-CA.
Court of Appeal of Louisiana, Second Circuit.
December 20, 2000.
*878 Robert Irvin Thompson, III, Loyd Kenneth Thomas, Shreveport, Counsel for Plaintiff-Appellant.
Mark Louis Riley, Lafayette, Counsel for Defendant-Appellee.
Before NORRIS, C.J., and BROWN and PEATROSS, JJ.
NORRIS, Chief Judge.
Viola Johnson and her husband appeal a jury verdict rejecting their claims against Mrs. Johnson's employer, Pennzoil, and her supervisor, Kerry English. They also contest the denial of JNOV and a ruling limiting their expert's testimony. We affirm.

Facts
Johnson was an instrument technician at Pennzoil Products Company. Pennzoil processed oil using both electricity and steam; the steam is produced by five separate boilers. Johnson's job at Pennzoil was to ensure that the instruments which measure levels in the boilers were operating correctly. Johnson's immediate supervisor was Kerry English; English was the instrument supervisor and had approximately 12 people working under him.
English testified that the plant could operate with four boilers, but it was preferable to run all five. English testified that prior to the incident complained of by Johnson, there were problems with boiler # 8 and it was down for maintenance. He further stated that when the boiler was restarted, someone left the water-level switch in the bypass position causing approximately $250,000 worth of damages. Johnson was accused of causing the problems, but an investigation revealed that two others were at fault.
A few months later, boiler # 6 was taken down for an annual turnaround. English testified that this normally takes about one *879 to two weeks. Johnson and several other technicians were working on this boiler; Johnson worked through the first weekend. Over the weekend, one of the supervisors stated the level was fine and ordered the boiler put back on-line. The boiler was not ready to be started and caused problems at the plant and had to be shut down again. Due to this situation and the one earlier on boiler # 8, a checklist was developed. The technicians continued to work on the boiler through the week, and Johnson and the more experienced technicians choose not to work through the second weekend. After the weekend, the boiler was still not on-line and the checklist was not completed. English attempted to get the list completed and told Johnson that she had to work late that night. At about 10:00 p.m., Johnson called English and told him she was unable to repair the instruments; it was decided that they would continue working on the boiler the next morning.
English testified that during this time, he was getting a lot of pressure from management. Additionally, the workers felt pressure due to the amount of time it was taking to get boiler # 6 back on-line and the prior termination of the individuals who were responsible for the damage to boiler # 8. Tuesday morning, Johnson again worked on boiler # 6. When it was time to start the boiler, she was in the control room. When asked if the boiler was ready, Johnson was hesitant about giving an answer. English was called to the control room and he ordered the boiler started. After the boiler was successfully started, English and Johnson walked out into the hall, at which time English informed Johnson he was disappointed in her. He stated that she should not have left a lesser experienced person to work on the boilers over the weekend. English and Johnson argued for several minutes over the issue. English testified that Johnson stopped paying attention to him, so he put his hand on her shoulder to regain her attention. Johnson testified that English got angry, grabbed and pushed her.
As a result of the confrontation, Johnson filed suit against English and Pennzoil (originally improperly named Atlas Processing) for the intentional torts of assault, battery, and intentional infliction of emotional harm. By amended petition, Johnson's husband, Henry Johnson, filed a claim for loss of consortium. Judith Day, a licensed counselor, testified as an expert on Johnson's behalf. Pursuant to objection, Ms. Day's testimony was limited in that she could not testify as to medical diagnosis because it was outside her expertise.
After a trial on the merits, a jury found that English, while acting in the course and scope of his employment with Pennzoil, committed an assault on Johnson. The jury further found that English did not commit a battery or intentionally inflict emotional harm. Additionally, the jury specifically found that the actions of English, although within the course and scope of his employment, did not cause compensable injury to either Johnson or her husband, thereby refusing to award damages.
Johnson filed a motion for a JNOV or new trial. The trial court denied the motion, finding that the verdict was supported by evidence and reasonable jurors could render verdict for the defendants. The trial judge stated that he felt an intentional tort had occurred, resulting in damages; however he refused to be the thirteenth juror, and denied Johnson's motion.
Johnson appeals the jury's verdict rejecting her claims, as well as the trial court's denial of her motion for JNOV. She further challenges as error the trial court's ruling limiting Ms. Day's testimony. Mr. Johnson appeals the denial of damages for his loss of consortium claim.

Law and analysis: Intentional torts
Johnson argues that the jury erred in failing to find that English had committed the intentional torts of battery and intentional *880 infliction of emotional harm. Additionally, she argues that the trial court erred in failing to grant her motion for a JNOV with respect to these claims.
Factual findings of a jury are accorded great weight and will not be disturbed on appeal absent manifest error. Stobart v. State, 617 So.2d 880 (La.1993); Gladney v. Sneed, 32,107 (La.App.2d Cir.8/18/99), 742 So.2d 642, writ denied 1999-2930 (La.1/14/00), 753 So.2d 215. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether its conclusion was reasonable. Id. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id.; Rosell v. ESCO, 549 So.2d 840 (La.1989).
A Judgment Notwithstanding the Verdict (JNOV) is the procedural device authorized by La. C.C.P. art. 1811 whereby the trial court may correct a legally erroneous verdict by modifying a jury's finding of fault or damages, or both. Anderson v. NOPSI, 583 So.2d 829 (La. 1991); Matthews v. Arkla Lubricants Inc., 32,121 (La.App.2d Cir.8/18/99), 740 So.2d 787. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. Id.; Maltby v. Lyttle, 99-1143 (La.App. 5th Cir.2/29/00), 758 So.2d 875; Allen v. Union Pacific R. Co., 29,783 (La.App.2d Cir.8/20/97), 698 So.2d 1037, writ denied 97-2343 (La.11/26/97), 703 So.2d 649; Ford v. State, 99-1297 (La.App. 3d Cir.4/12/00), 760 So.2d 478, writ denied, XXXX-XXXX (La.9/27/00), 769 So.2d 1214. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. Id. If there is evidence opposing the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Anderson v. NOPSI, supra. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Maltby v. Lyttle, supra; Matthews v. Arkla Lubricants Inc., supra; Ford v. State, supra.
In reviewing the trial court's ruling on the JNOV motion, we inquire whether the facts and inferences established on the record point so strongly in favor of the mover that reasonable men and women could not have reached the conclusion reached by the jury. Allen v. Union Pacific R. Co., supra.
To constitute an assault, threats, coupled with the present ability to carry out the threats, are sufficient when one is placed in reasonable apprehension of receiving an injury. McVay v. Delchamps, Inc., 97-860 (La.App. 5th Cir.1/14/98), 707 So.2d 90. English and Pennzoil do not challenge the jury's finding that English committed the intentional tort of assault.
Battery is an intentional offensive contact with another person. Caudle v. Betts, 512 So.2d 389 (La.1987); Lowery v. Savana, 33,384 (La.App.2d Cir.5/10/00), 759 So.2d 1020; Lawrence v. Security Professionals, 32,325 (La.App.2d Cir.8/18/99), 743 So.2d 247, writ denied 99-2727 (La.11/24/99), 750 So.2d 991. The intention need not be malicious nor an intent to inflict actual damage. Lowrey v. Pettit, 31881 (La.App.2d Cir.5/7/99), 737 So.2d 213. It is sufficient if the actor intends to inflict an offensive contact without the other's consent. Id. Not every intentional, nonconsensual contact is a battery. See Robinson v. Dunn, 96-0341 (La.App. 1st Cir.11/8/96), 683 So.2d 894, writ denied 96-2965 (La.1/31/97), 687 So.2d 410.
*881 In order to maintain a cause of action for intentional infliction of emotional distress, the plaintiff must prove: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his or her conduct. White v. Monsanto, 585 So.2d 1205 (La.1991); Guilbeaux v. Times of Acadiana, Inc., 94-1270 (La.App. 3d Cir.8/9/95), 661 So.2d 1027, writ denied 95-2942 (La.3/29/96), 670 So.2d 1238. Extreme and outrageous conduct is conduct so atrocious as to pass the boundaries of decency and to be utterly intolerable to civilized society. Id. The conduct must be intended to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry or the like. Id.
Johnson testified that both she and English were yelling. She stated that English was angry and stated that he was disappointed in her. She stated that he pushed her on her shoulder and told her to get "that damned boiler going." Johnson testified that English pushed her hard enough to move her back. She stated that she was in shock and told him that he "shouldn't have done that," and English walked away.
English testified that both he and Johnson were yelling and at one point Johnson turned away from him and stopped listening. He stated that he was under pressure and that both of them were angry. English stated that when Johnson stopped listening, he put his hand on her shoulder to get her attention and told her to listen. He stated that they talked a little more; afterwards, Johnson walked away.
There were no witnesses to the incident; however, several witnesses saw English and Johnson arguing and they all agreed that both appeared angry and both were yelling. The day after the alleged incident, a meeting was called to discuss why it had taken the technicians so long to get the boiler back on-line. Johnson, English, Keith Parker, a union official, Ricky Robinson, Gerald Kent, a union representative, William Law, an instrument technician, and Richard Nichols, assistant maintenance manager attended the meeting. Kent, Nichols and Parker testified that at the meeting, Johnson accused English of pushing her. Kent did not recall if English responded to the accusations; Kent's notes, which he took during the meeting, were introduced. Nichols misinterpreted the statement to mean that English was pushing her to work harder than usual. Law stated that at first English denied touching her, but after being asked again admitted grabbing Johnson. Robinson testified that English said he grabbed Johnson to get her attention; Robinson's notes, which he took during the meeting, were admitted as evidence. English stated that he admitted at the meeting to having put his hand on Johnson's shoulder to get her attention.
Parker and Kent testified that Johnson never filed a grievance with the union nor did either one of them pursue the issue. Additionally, administration was never asked to conduct an investigation and they did not independently address the issue with either English or Johnson. Furthermore, although several individuals witnessed the argument and were in the area during the time of the incident, no one observed English push or touch Johnson.
The jury obviously found English's testimony that he merely touched Johnson's shoulder to get her attention more credible than Johnson's testimony that English pushed her so hard that she moved back a couple of steps. Based on our review of the record, Johnson was not crying or showing any signs of being upset immediately after the contact. Additionally, neither Johnson nor the union representatives at the meeting felt that the incident was serious enough to warrant a grievance; nor did Johnson ask the supervisors above English to conduct an investigation. *882 Notably, although Johnson described a relatively violent event, no one in the area noticed such an event. Furthermore, although Johnson testified that she avoids English at work, she also testified that she wants her old job back,[1] which she admits would place her under English's direct supervision. Additionally, she testified that she did not fear English. Based on the record, the jury was not manifestly erroneous in finding that English's actions toward Johnson did not meet the criteria for intentional infliction of emotional harm. White v. Monsanto, supra; Guilbeaux v. Times of Acadiana, Inc., supra. Additionally, although English did admit to touching Johnson on the shoulder, based on the conflicting testimony, the jury was not manifestly erroneous in finding that the simple act of touching her on the shoulder to regain her attention was neither harmful nor offensive. Caudle v. Betts, supra. As such, the jury was not manifestly erroneous in finding that English did not commit the intentional tort of battery.
Finding no merit in Johnson's argument that the jury was manifestly erroneous in ruling that English did not commit a battery or intentional infliction of emotional harm, we also find that the trial judge was correct in denying her JNOV. A finding of no manifest error yields a determination that reasonable men could find as the jury did. Matthews v. Arkla Lubricants Inc., supra.

Damages
Johnson argues that the jury erred in finding that the injuries she described at trial were not the result of the intentional tort.[2] Additionally, Henry Johnson argues that the jury was incorrect in finding that he did not incur loss of consortium. They both argue that the trial judge erred in not granting their JNOV on these issues.
In order to recover for a tort, a plaintiff must prove by a preponderance of the evidence that her damages resulted from the defendant's actions. Lowery v. Savana, supra; Merrells v. State Farm, 33,404 (La.App.2d Cir.6/21/00), 764 So.2d 1182; Rhodes v. State, DOTD, 94-1758 (La.App. 1st Cir.12/20/96), 684 So.2d 1134, writ not considered, 97-0242 (La.2/7/97), 688 So.2d 487.
A trial court evaluates expert testimony by the same principles that apply to other witnesses and has great discretion to accept or reject expert or lay opinion. Orea v. Scallan, 32-622 (La. App.2d Cir.1/26/00), 750 So.2d 483. The weight to be accorded to testimony of experts depends largely on their qualifications and the facts upon which they base their opinions. Id.
Johnson testified that as a result of this incident, she suffered from depression and anxiety. She stated that she has lost interest in her surroundings and prefers to be inactive in events which at one time gave her great joy. She stated that she does not attend church as often as she did before the incident, she no longer does the housework, and she no longer spends as much time with her granddaughter. She testified that she is not as interested in intimate activities with her husband as she once was; Henry Johnson testified similarly.
Johnson's co-workers, Parker and Law, testified that Johnson is no longer as carefree as she was before this incident. She does not joke around as much or seem to enjoy work anymore. They testified that *883 they notice a significant difference in her personality since this incident. Johnson's sister, Judy Mason, testified that she also has noticed a difference in Johnson. She stated that Johnson is not as light-hearted. Mason moved in with her sister due to Johnson's depression. Mason testified that Johnson has improved, but is not the same as she was before the incident.
Judith Day, an expert in professional counseling and therapy, testified that Johnson came to her for counseling; she stated that at first, Johnson was seeing her on a weekly basis, but is currently scheduling visits about every other week. Ms. Day stated that when Johnson first came to her, she was very distressed, crying a lot, shaking, and was frightened about the future. Ms. Day stated that based on her interviews and the intake sheet, something traumatic and intimidating occurred at work; Ms. Day stated that based on Johnson's history, her psychological problems resulted from English pushing her.
Johnson was referred to Dr. John Ritchie, an expert medical doctor with a specialty in psychiatry, by Pennzoil when she had problems returning to work. Dr. Ritchie testified that Johnson suffered from depression and anxiety. Additionally, he stated that she had some symptoms of Post Traumatic Stress Disorder (PTSD), although she did not meet the criteria for a diagnosis. Dr. Ritchie also stated that based on Johnson's self-reporting, her problems did not occur until she was pushed by English.
None of Johnson's co-workers noticed her having difficulties the day that the incident occurred. Parker testified that Johnson cried the next day at the meeting when she stated that English pushed her; however, none of the other witnesses at the meeting noticed Johnson crying. Additionally, all of Johnson's co-workers stated that Johnson was having difficulties at work prior to the incident. Johnson testified that she had been the center of an investigation that resulting in two individuals being fired. She stated that during the investigation, English expressed his sympathy at her being accused of wrongdoing and she hugged him and cried. Furthermore, all Johnson's co-workers testified that a lot of pressure was being exerted over the instrument crew due to the amount of time boiler # 6 was down. Johnson was apparently frustrated during much of the time she was helping repair boiler # 6. Robinson stated that Rob Stevens, another supervisor, had been "hollering at [Johnson] about getting the boiler on-line." Furthermore, although Johnson testified that she was uncomfortable around English and went out of her way to avoid him, she was seeking to return to a position that would cause her to again be supervised by English and she testified that she did not fear him.
The evidence supports the conclusion that Johnson was suffering from depression and anxiety. While Dr. Ritchie and Ms. Day attribute this to the specific incident with English, their opinions were based solely on Johnson's history, and there was ample evidence that Johnson was having difficulties at work prior to the incident she described with English. The jury apparently concluded that Johnson did not prove that her psychological problems were the result of English's actions. Based on the entirety of the record, we cannot say this is plainly wrong. Based on this finding, the jury was not manifestly erroneous in further finding that Mr. Johnson did not suffer any loss of consortium damages due to English's intentional actions.

Expert testimony
Prior to trial, defendants filed a motion in limine to limit the testimony of Johnson's expert, Judith Day, a licensed practical counselor. Defendants argued that diagnosis, prognosis and details of treatment were beyond Ms. Day's expertise. Immediately prior to Ms. Day's testimony, the trial court issued a ruling limiting Ms. Day's testimony to her specialty, counseling, and ruling that official diagnosis *884 was outside her area. The court specifically stated that Ms. Day could not testify as to an official diagnosis of PTSD. Johnson appeals the trial court's ruling.
La. C.E. art. 702 provides that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." A trial judge has wide discretion in determining whether to allow a witness to testify as an expert, and his judgment will not be disturbed by an appellate court unless it is clearly erroneous. Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.1/29/96), 666 So.2d 1073; Hunter v. Bossier Medical Center, 31,026 (La.App.2d Cir.9/25/98), 718 So.2d 636; Breeden v. Valencia, Inc., 557 So.2d 302 (La.App. 4th Cir.), writ denied 558 So.2d 607 (1990); James v. Beauregard Electric, 99-71 (La.App. 3d Cir.6/9/99), 736 So.2d 353, writ denied 99-2030 (La.11/5/99), 750 So.2d 180.
In deposition, Ms. Day testified that she has a master's degree in counseling and an educational specialist certification. She stated that she was not a psychologist or a medical doctor and could not prescribe medications. Ms. Day also testified that she was unsure of her qualifications to make medical diagnosis, but stated that she routinely did so for the sole purpose of completing insurance forms.
Based on Ms. Day's testimony as to her credentials and qualifications, the trial court was not in clearly erroneous in limiting her testimony. Additionally, any testimony which Johnson was attempting to elicit from Ms. Day about medical diagnosis was introduced through Dr. Ritchie's testimony. La. C.E. art. 103(A); Dean v. State, DOTD, 32,816 (La.App.2d Cir.12/8/99), 749 So.2d 846, writ denied, XXXX-XXXX (La.2/25/00), 755 So.2d 887.

Conclusion
For the expressed reasons, we affirm the jury's finding that English committed an assault on Johnson. We further affirm its finding that he did not commit the intentional torts of battery or intentional infliction of emotional harm. We further affirm the jury's finding that the actions of English did not cause the injuries Johnson or her husband testified to. Subsequently, we also affirm the trial court's denial of the JNOV. Additionally, we affirm the trial judge's limiting of Ms. Day's testimony. Costs of appeal are assessed to appellants.
AFFIRMED.
NOTES
[1] Johnson is currently working in the warehouse. She retains her former title as instrument technician and continues to be paid the same as before the instant incident.
[2] The jury specifically found that Johnson's damages were not the result of English's actions. Even had we found the jury manifestly erroneous in determining that the touch on the shoulder was not a battery, we would still find that the jury was not manifestly erroneous in not awarding Johnson and her husband damages. The jury considered all of English's actions in its determination, regardless of what they label the actions to be.